# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:09cv159

| | |
|---|---|
| GENERAL CASUALTY COMPANY OF WISCONSIN, SOUTHERN PILOT INSURANCE COMPANY, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| IMAGE BUILDERS, INC., d/b/a Hanson Builders, RICHARD HANSON, CARL SCHNEIDER, and CHERYL SCHNEIDER, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Plaintiffs' Motion for Summary Judgment [Doc. 21].

In this declaratory judgment action the parties seek a determination as to whether there is insurance coverage for certain site work repairs necessitated by a contractor's faulty work. The Plaintiffs (General Casualty) issued a business owner's insurance policy to Defendants Image Builders,

Inc. d/b/a Hanson Builders (Image) and Richard Hanson (Hanson).[1] [Doc. 1; Doc. 3, at 2-3]. Image entered into a contract with Defendants Carl and Cheryl Schneider (the Schneiders) to construct a residence on the property at 294 Parrish Farm Road in Waynesville, North Carolina. The contract contained an arbitration clause which required that they submit any dispute "to binding arbitration under the then appertaining rules of the American Arbitration Association[.]" [Id., at 8]. In September 2004, during the heavy rains from Hurricanes Frances and Ivan two large landslides occurred on the Schneiders' property.[2] [Doc. 27-3, at 2].

On February 22, 2005, the Schneiders brought suit against Hanson and Image in state court. [Doc. 3-1, at 1]. Hanson and Image tendered the defense of that claim to General Casualty, which it accepted under a reservation of rights. [Doc. 3, at 4; Doc. 27, at 2]. There is no dispute that the

---

[1] Businessowner's Policy #ONBOP66497 issued from Southern Pilot Insurance Company to Image Builders, Inc., d/b/a Hanson Builders. [Doc. 1-1]. At all relevant times, Southern Pilot was wholly owned by General Casualty Company of Wisconsin. [Doc. 3, at 2].

[2] Hurricane Frances hit the area on September 7, 2004, and Hurricane Ivan hit on September 17, 2004. The record indicates that the damage occurred in October 2004, [Doc. 27-3], but there are repeated references in the record to the slide having been caused by the torrential rains from the two hurricanes. Hurricane Frances in particular brought some 23 inches of rain to the area within a 24 hour period, disrupting the water system for the City of Asheville (the largest city in the area) for a week.

2

policy was in effect at the time of the events leading to the lawsuit.[3] [Id., at 3].

In the state court complaint, the Schneiders alleged that Image and Hanson

> failed to place the water drainage pipes properly, which resulted in the front half of the property separating and sliding down the face of the mountain causing damage to the property and entrance road, thereby committing a material breach of the contract. [The] Defendant[s] failed to compact and or grade the dirt located in the front yard of the property thereby committing a material breach of the contract.

[Doc. 3-1, at 2]. They also alleged that Image and Hanson failed to comply with building codes and did not properly supervise and monitor the work performed. [Id., at 2-4]. The Schneiders asserted claims for breach of contract, breach of warranty and negligence claiming that "[b]ut for the negligence of the defendants the [Schneiders'] land in front of their home would not have slid down the side of the slope causing damage." [Id., at 3]. There is no allegation in the state court complaint of any other cause for the slide. The Schneiders also asserted claims for faulty construction with regard to a deck and the electrical work in the house. Those claims are not a subject of this action.

Pursuant to the terms of the construction agreement, the parties

---

[3]The policy was continued through several renewal periods and was in effect at all relevant times. [Doc. 22, at 9]. Each renewed policy contained the same terms and provisions and provided the same coverage. [Docs. 1-1 through 1-9; Doc. 9, at 4].

submitted the dispute to arbitration. On March 3, 2009, the arbitrator awarded the Schneiders $95,000.00 in damages against Hanson and Image. [Doc. 3, at 5]. He also awarded costs in the amount of $5,253.00 and attorneys' fees of $15,000.00. [Id.]. He did not issue written findings of fact or conclusions of law in support of the award, and provided no information as to how he arrived upon the amounts awarded or what damages were allowed and what were not. No transcript or other record of the evidence submitted to the arbitrator has been preserved or presented to this Court. Nothing has been filed with this Court showing that the arbitration award was confirmed by the state court or reduced to judgment, or that any motion to vacate or modify the award was made.

General Casualty then filed this action seeking declaratory judgment that its policy provides no coverage for the arbitration award. [Doc. 1, Doc. 3]. The Schneiders have counterclaimed seeking a declaration that the award is covered. [Doc. 9]. Image and Hanson have failed to appear and the Clerk has entered their default. [Doc. 17].

In response to the General Casualty's Motion for Summary Judgment, the Schneiders have presented a forecast of evidence consisting primarily of the discovery that was taken in the state court action. This included the Schneiders sworn answers to interrogatories which read in pertinent part:

4

> The subject of this action is that *proper drainage was not installed which caused the north side of the lot to slide down the hill* in the rains of Hurricane Ivan and Frances. Further, that the fill dirt used to build up the north side of the lot was not properly compacted which contributed to the slide.
>
> ...
>
> The front yard slid because the spoil [sic] from excavating the house site was not adequately compacted, but just pushed over the edge. This was compounded by the storm drains terminating just over the edge of the slope instead of extending them down to the base of the hill.
>
> ...
>
> The drainage pipes were never installed. The drains stopped at the top of the hill directing the flow of the water onto the top of the loose fill below. There was no evidence in the debris that drainage pipes extended down the hill.

[Doc. 29-1, at 3-5 (emphasis added)]. Inherent in that discovery response was the assertion that the purpose of the drainage was to prevent damage to the slope during heavy rainfall. The Schneiders have not presented any forecast of evidence that there was any cause of the damage except the failure to compact the soil properly and to install an adequate drainage system.

The deposition testimony of Hanson was submitted wherein he stated that, in his opinion, the reason for the landslide was that "we had two back-to-back record rainfalls amounting in a record amount of water."[4] [Doc. 22-1, at

---

[4] Hanson reiterated this opinion during the arbitration. [Doc. 22-2, at 4].

29]. The parties also submitted the deposition of Gary McKay (McKay), a licensed civil engineer and general contractor.[5] [Doc. 27-2]. McKay testified as an expert witness that the angle of the slope after grading contributed to the slide. [Doc. 27-2, at 20]. He also opined that the soil was not properly compacted during construction of the home. [Doc. 27-3, at 2-3]. When asked about the rainfall in the area, McKay stated that none of the other properties in the same development had a landslide although all of them experienced the same amount of rain. [Id., at 5]. McKay further testified that the drainage pipes installed on the property did not meet Code requirements. [Id., at 12].

The pertinent portion of the insurance policy dealing with liability coverage provides that the Plaintiffs "will pay those sums that the insured becomes legally obligated to pay as damages because of 'property damage'[.]" [Doc. 1-8, at 1]. Property damage is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[Doc. 1-8, at 14].

---

[5]McKay also testified at the arbitration hearing held in November 2009. [Doc. 22-2, at 3].

Property damage is covered, however, only if it is caused by an "occurrence." [Id.]. "Occurrence" is defined under the policy as meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Id., at 13].

Liability coverage is excluded for property damage to "[t]hat particular part of any property that must be ... repaired ... because 'your work' was incorrectly performed on it." [Doc. 1-8, at 6]. "Your work" is defined as including "work or operations performed by you or on your behalf" and includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'[.]" [Id., at 15]. "Your work" also includes the provision of instructions. [Id.].

**STANDARD OF REVIEW**

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), *certiorari denied* 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732

7

(2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

A party opposing a properly supported motion for summary judgment

> "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id. (citations omitted).

Nonetheless, in considering the facts for the purposes of a summary

8

judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

Whether coverage lies for the Schneiders' loss hinges on whether they are able to prove that their loss was from "property damage" resulting from an "occurrence," as those terms are defined in the policy. "In North Carolina, the insured 'has the burden of bringing itself within the insuring language of the policy. Once it has been determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage.'" Production Systems, Inc. v. Amerisure Ins. Co., 167 N.C.App. 601, 605, 605 S.E.2d 663 (2004), *review denied* 359 N.C. 322, 611 S.E.2d 416 (2005). The insureds in this matter, Image and Hanson, have defaulted and have presented nothing in response to the motions for summary judgment. The burden of showing that the facts fall within the language of the policy, therefore, falls upon the parties asserting coverage, here the Schneiders.

> "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of

construction." "An insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." "The language in the policy is to be construed as written 'without rewriting the contract or disregarding the express language used.'" ... "Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended."

Magnolia Mfg. of North Carolina, Inc. v. Erie Ins. Exchange, 179 N.C.App. 267, 278, 633 S.E.2d 841 (2006) (Tyson, J. *dissenting*), *rev'd for the reasons stated in dissent*, 361 N.C. 213, 639 S.E.2d 443 (2007), *rehearing denied* 361 N.C. 371, 644 S.E.2d 229 (2007).

Even though the arbitrator found that Image and Hanson were liable to the Schneiders for faulty workmanship, he did not render any decision as to which of the Schneiders' claims formed the basis for such liability. The Court must, therefore, look to the forecast of evidence presented as to whether it would support a finding that the loss resulted from "property damage" caused by an "occurrence." The Schneiders assert that the loss was "created by a combination of defective workmanship that destabilized the slope and the *accidental occurrence* caused by the unusually heavy rainfall that caused the destabilized slope to fail." [Doc. 27 at 8 (emphasis added)]. As such, the Schneiders now rely on the heavy rains as being the "occurrence" giving rise to coverage. They apparently concede that the faulty workmanship cannot

10

constitute an "occurrence."[6]

The Schneiders' reliance on the heavy rain as being the "occurrence," however, falls short. Slope failure is the natural consequence of faulty site preparation. The purpose of the compaction of a constructed slope and installation of slope drainage is to prevent heavy rains from destroying the slope. As such, heavy rain is not a separate cause of the slope failure, but rather is the means by which the faulty construction of the slope was brought to its unfortunate fruition. Auto-Owners Inc. Co. v. Northwestern Housing Enterprises, Inc., 2008 WL 901176 (W.D.N.C. 2008) ("The concept of 'multiple causes,' while applicable to tort claims, has no application to determination of liability insurance coverage."); Gaston County Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 303, 524 S.E.2d 558 (2000) ("In determining whether

---

[6] It appears that the Schneiders may be taking a position in this action inconsistent with what they took in the arbitration. There they prevailed, apparently on a theory that Image and Hanson were liable as a result of their faulty workmanship. Here the Schneiders assert that the "occurrence" that caused the damage was the heavy rain.

> Judicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system. Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefitting itself by maintaining mutually inconsistent position regarding a particular situation.

King v. Herbert J. Thomas Mem. Hosp., 159 F.3d 192, 196 (4th Cir. 1998). Because of the determination *infra* that there was no "occurrence," the Court need not reach the issue of whether the Schneiders' claim for coverage is barred by judicial estoppel.

11

there was a single occurrence or multiple occurrences, we look to the cause of the property damage rather than to the effect."). See also, Greeley v. Auto-Owners Ins. Co., 2008 WL 227308 (W.D.N.C. 2008) (no "occurrence" when the underlying cause of damage was the improper construction.); Wm. C. Vick Constr. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,52 F. Supp. 2d 569, 584-85 (E.D.N.C. 1999)(same).

"Liability insurance is not a substitute for a performance bond." Travelers Indemnity Co. v. Miller Building Corp., 97 Fed. Appx. 431, 434 (4th Cir. 2004) (citing Western World Ins. Co. v. Carrington,, 90 N.C. App. 520, 523-24, 369 S.E.2d 128, 130 (1988).). The Schneiders, however, are seeking a declaration that the insurance policy at issue provides coverage for faulty workmanship as would a performance bond.

For these reasons the Court concludes as a matter of law that the forecast of evidence presented does not raise any genuine issue of material fact in that no reasonable jury could conclude that there was an occurrence that resulted in any property damage as those terms are defined in the contract of insurance at issue. Therefore, the Plaintiffs are entitled to judgment as a matter of law.

In addition to there being no evidence of an "occurrence," the facts of this case appear to fall squarely within a stated exclusion from coverage.

Property damage resulting from "[t]hat particular part of any property that must be ... repaired ... because 'your work' was incorrectly performed on it" is excluded. [Doc. 1-8, at 6]. "Your work" is defined as including "work or operations performed by you or on your behalf." [Id., at 15]. It is undisputed that the faulty workmanship of Image and Hanson in the construction of the slope was part of "your [the insured's] work." Therefore, the forecast of evidence yields no genuine issues as to any material fact, and thus General Casualty is entitled to judgment as a matter of law.

The final argument of the Schneiders is, in substance, that even though there may be no evidence of an "occurrence" and an exclusion may appear to apply, General Casualty is estopped from denying coverage because it provided a defense and the arbitrator found liability on the part of the insured, relying on Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc., 262 N.C. 691, 138 S.E.2d 512 (1964). That case, however, is inapposite. It is true that the insurer defended the claim under a reservation of rights ("non-waiver agreement"), and there was a determination in the underlying action that the insured was liable to the claimant. The North Carolina Supreme Court held that the determination of liability was binding on the insurer. The reason, however, was that the court in the underlying action had specifically found that the insured was negligent in causing the claimant's harm, and that negligence

was a covered event under the policy. The issue of whether the insured was negligent could not be relitigated in the declaratory judgment action. Id. at 695. In the present case, however, there was no determination that the insured had committed any act that fell within the coverage of the policy. In fact, there is no evidence before this Court that the insured's actions afforded any coverage. Therefore, General Casualty is entitled to judgment as a matter of law.

Having concluded that there is no evidence of an "occurrence" and that the "your work" exclusion applies, the Court need not proceed to the issues regarding the definition of "property damage" or to the novel procedural issue which arises from the limited findings of the arbitrator. Generally, "the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (citation and internal quotations omitted). "It is well settled that arbitrators are not required to disclose the basis upon which their awards are made and courts will not look behind a lump-sum award in an attempt to analyze their reasoning process." MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 862

(4th Cir. 2010). In this case the Schneiders and Image and Hanson arbitrated to a conclusion the issues of liability and the amount of damages to which the Schneiders are entitled from the contractor. These are conclusively determined as between the parties (assuming the arbitration award was confirmed and reduced to a judgment). There was no determination, however, as to whether the award arises from claims which the parties agree cannot be covered by the insurance policy (the defective deck and electrical work) and those which the Schneiders contend are covered (slope failure). Since no party has presented a forecast of evidence that would allow for the case regarding the slope failure to proceed, it is merely an academic question as to whether the Schneiders would be entitled to any further hearing if such a forecast had been presented.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' Motion for Summary Judgment [Doc. 21] is hereby **GRANTED** and the Plaintiffs' are entitled to declaratory judgment as entered simultaneously herewith.

**IT IS FURTHER ORDERED** that the counterclaim of Carl and Cheryl Schneider is hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs

and attorneys' fees.

Signed: October 29, 2010

Martin Reidinger
United States District Judge